UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR COSTA,<br><br>    Plaintiff,<br><br>    v.<br><br>RELIANCE VITAMIN CO., INC.,<br><br>    Defendant. | Case No. 3:22-cv-04679-WHO<br><br>**ORDER ON MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 36 |

Plaintiff Taylor Costa filed an amended complaint in this putative class action on behalf of herself and a class of California consumers, alleging that defendant Reliance Vitamin LLC misleadingly packages and sells its protein powder in containers that are unnecessarily large and contain unlawful "slack fill." Reliance moved to dismiss the claims. For the reasons that follow, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The factual background in this case is outlined in detail in my prior Order on the first motion to dismiss. ("Order") [Dkt. No. 34]. This order assumes familiarity with those facts. Where relevant in this order, I emphasize additional facts pleaded in Costa's operative First Amended Complaint. ("FAC") [Dkt. No. 35].

The FAC asserts seven claims under California law: (1) violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, et seq.; (2) violation of California's False and Misleading Advertising Laws ("FAL"), Bus. & Prof. Code §§ 17500, et seq.; (3) violation of California's Consumers Legal Remedies Act ("CRLA"), Cal. Civ. Code §§ 1750, et seq.; (4) breach of express and implied warranty; (5) fraudulent inducement and intentional misrepresentation; (6) negligent misrepresentation; and (7) unjust enrichment and restitution.

Costa brings the claims on behalf of herself and a class of California consumers. FAC ¶ 144.

Reliance filed its motion to dismiss the FAC, ("Mot.") [Dkt. No. 36], and a request for judicial notice, ("RFJN 1") [Dkt. No. 37]. Costa filed her opposition. ("Oppo.") [Dkt. No. 40]. Reliance filed a reply, ("Repl.") [Dkt. No. 41], and another request for judicial notice, ("RFJN 2") [Dkt. No. 42]. Under Civil Local Rule 7-1(b), I find this matter appropriate for resolution without oral argument and so VACATE the hearing scheduled for April 19, 2023.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*

*Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.      REASONABLE CONSUMER STANDARD[1]**

The vast majority of the parties' briefing addresses the reasonable consumer standard under the UCL, FAL, and CRLA. Though I previously dismissed these claims for failure to meet the reasonable consumer standard, I find that with the additional and amended allegations in her FAC, Costa has now pleaded that a reasonable consumer would be deceived by Reliance's product and packaging.

Claims for violations of the UCL, FAL, and CRLA "are governed by the 'reasonable consumer' test," under which a plaintiff must "show that 'members of the public are likely to be deceived'" by the labeling and packaging. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). This standard requires a plaintiff to show "more than a mere possibility that [the defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal. Rptr. 2d 486, 495 (2003)). Rather, to survive a motion to dismiss a plaintiff must show "a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508).

"In accordance with *Ebner*, many district courts have found that where the package itself discloses the actual unit counts, a 'reasonable consumer' could not be misled." *Kennard v. Lamb Weston Holdings, Inc.*, No. 18-CV-04665-YGR, 2019 WL 1586022, at *5 (N.D. Cal. Apr. 12, 2019) (collecting cases); *Buso v. ACH Food Cos., Inc.*, 445 F. Supp. 3d 1033, 1038 (S.D. Cal.

---

[1] Reliance's request that I take judicial notice of the Hon. Trina L. Thompson's decision in *Sinatro v. Mrs. Gooch's Natural Food Markets*, No. 22-CV-03603-TLT, 2023 WL 2324291 (N.D. Cal. Feb. 16, 2023), is GRANTED. [Dkt. No. 37]; *see Boruta v. JPMorgan Chase Bank, N.A.*, No. 19-cv-07257-WHO, 2020 WL 887784, at *5 n.4 (N.D. Cal. Feb. 24, 2020) ("A court may take judicial notice of undisputed matters of public record, including publicly available court records." (citing *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018)).
  Reliance's requests that I take judicial notice of the exhibits filed in *Sinatro*, *Buso v. ACH Food Cos., Inc.*, 445 F. Supp. 3d 1033, 1038 (S.D. Cal. 2020), and *Reider v. Immaculate Baking Co.*, No. 18-cv-01085-JLS-AS, 2018 WL 6930890 (C.D. Cal. Nov. 8, 2018), are GRANTED. [Dkt. No. 42]; *see Boruta*, 2020 WL 887784, at *5 n.4.

2020) (collecting cases). But as I explained in detail in my prior Order, "a scoop of protein powder is inherently less comprehensible and tangible than 'one cookie' or 'ten chips' or even 'one 8-inch square loaf of cornbread.'" Order at 12:25-27; *see also Barrett v. Optimum Nutrition*, No. CV 21-4398-DMG (SKX), 2022 WL 2035959, at *2-3 (C.D. Cal. Jan. 12, 2022) (contrasting labels that disclose numbers of "discrete, countable goods" and labels stating "a cannister contains 20 scoops of protein powder," the latter of which "communicates materially less information").

As I previously noted, this case presents a slightly different factual scenario from other protein powder slack fill cases because the allegedly deceptive packaging attempts to "quantify" the powder. *Cf. Barrett*, 2022 WL 2035959, at *3; *see also Kennard*, 2019 WL 1586022, at *5-6 (distinguishing cases that do or do not "involve the disclosure of actual unit counts"). But Costa has now added allegations that the attempted quantification is insufficient to dispel the deception caused by the size of and amount of slack fill in the container. First, she acknowledges that the "rear" nutrition label states that one serving equals one scoop or 30 grams and that there are 15 scoops per container, and that the "side" label has "preparation instructions" directing consumers to add one scoop of powder to 10 to 12 ounces of water and mix. FAC ¶¶ 44, 46. Then she pleads it is unreasonable to expect a consumer to pick up the container, turn it around to see the rear nutrition label, turn it further to see the side preparation label, calculate from this information how many drinks can be made, and understand that the powder in the container yields about 15 10-to-12-ounce beverages. *Id.* ¶¶ 47-48. Rather, she says, consumers will rely on the size of the container to understand how much protein powder they get with each purchase. *See id.* ¶¶ 57-58.

Costa also sufficiently pleads that relying on the container size to understand how much powder she purchased meets the reasonable consumer standard in this context. While she asserts that Reliance's labels were insufficient to dispel the deception created by the size of the container and slack fill, *id.* ¶¶ 48, 50-51, 64-66, 76, she points to other protein powder products that use alternatives—like fill lines, clear packaging, and less slack fill—that apparently dispel any deception or consumer confusion, *id.* ¶¶ 83-92, 136-40. This shows not only that alternative packaging existed, but also that a typical protein powder consumer would encounter those alternatives in the market, which supports her assertion that it would be reasonable for consumers

4

to rely on container size where those alternatives are not used—such as in Reliance's products.[2] Combined with her allegations that the labels on the Reliance containers were not sufficient to dispel the deception, given they do not provide a clear statement of yield that a reasonable consumer would understand, Costa shows reasonable consumers are likely to be misled by Reliance's container size and use of slack fill.[3] *See Ebner*, 838 F.3d at 965.

The new allegations sufficiently distinguish this case from Reliance's cited cases. Though Reliance argues that "the packaging and label claims on unrelated products are immaterial," Repl. 11:1, it compares the packaging and label claims on the cornbread mix in *Buso*, the cake mix in *Reider v. Immaculate Baking Co.*, No. 18-cv-01085-JLS-AS, 2018 WL 6930890 (C.D. Cal. Nov. 8, 2018), and the macaroni in *Sinatro v. Mrs. Gooch's Natural Food Markets*, No. 22-CV-03603-TLT, 2023 WL 2324291, at *1 (N.D. Cal. Feb. 16, 2023). Costa's new allegations, however, show there is no clear statement of yield provided in a way a reasonable consumer would understand, which sufficiently distinguishes the clear yield of 12 muffins or a "8-inch square" bread provided on the *Buso* label, *see* RFJN 2 at Ex. 3, and the clear count of cakes and cupcakes provided on the *Reider* label, *id.* Ex. 2 at Ex. 1; *see also Reider*, 2018 WL 6930890, at *2-3

---

[2] This also distinguishes the case from *Ebner*, where the Ninth Circuit reasoned lipstick tubes that prevented consumers from accessing about a quarter of the lipstick product would not deceive a reasonable consumer, in part because that design was "commonplace in the market" and reasonable lipstick consumers understood both the mechanics of the tube and that some of the product would be inaccessible. 838 F.3d at 965-66. Here, Costa's allegations show that a reasonable protein powder consumer would understand the size of the container to indicate the amount of product contained therein unless the container used an alternative—like fill lines or clear packaging.

[3] This is true even considering the packaging as a whole, as Reliance requests. *See* Mot. 13:18-24 (citing *Klammer v. Mondelez Int'l, Inc.*, No. 22-CV-02046-JSW, 2023 WL 105095, at *3 (N.D. Cal. Jan. 4, 2023)). In *Klammer*, the Hon. Jeffrey S. White explained specific words on a label could not be analyzed alone to assess their affect on a reasonable consumer because those words "never appear[ed] in isolation" on a label and were "always used in connection with" other words, so the court analyzed the packaging "as a whole." *Id.* He cited as support *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995), which similarly held that phrases in a document could not be interpreted without considering the context of other statements in the document. Both cases are not directly applicable here because Costa does not consider the nutrition label or the preparation instructions in isolation; rather, she asserts that *even if* a reasonable consumer took the time to read them together, that would still be insufficient to dispel the deception created by the size and slack fill in the packaging. *See* FAC ¶¶ 48, 50. Judge White also cited an unpublished memorandum disposition from the Ninth Circuit, *Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021), which does not provide sufficient factual background to compare to this case.

1  (noting the yield chart was "dispositive" where it "list[ed] the number of certain size cakes that
2  can be made from one box of mix" and where the volume and weight was not "telling of how
3  much prepared cake the mix ultimately produce[d]").

4  And in *Sinatro*, Judge Thompson reconciled what she viewed as differences in slack fill
5  cases by noting that "courts consider[] whether the label convey[s] to a reasonable consumer the
6  quantity in the package in units that [are] relevant for the type of product." *Sinatro*, 2023 WL
7  2324291, at *11. There, the nutrition label clearly stated that there was one cup of prepared
8  macaroni per serving and two to three servings (depending on the box) per container. RFJN 2 Ex.
9  3. *Sinatro* reasoned that cups of cooked macaroni were the units most relevant to consumers of
10 macaroni, and because the label explicitly informed consumers how many cups of cooked
11 macaroni the package contained, a reasonable macaroni consumer could not be deceived by the
12 label. *Sinatro*, 2023 WL 2324291, at *11-13. Here, it is plausible that the number and size of
13 beverages that can be made from protein powder are the units most relevant to consumers of
14 protein powder—rather than, as Reliance seems to suggest, the volume or weight of the total
15 powder in the container. And Costa pleads that the label does not *specifically* state how many
16 beverages of what size can be made from the powder; indeed given that the information appears in
17 different parts of the label and uses different units, it differs from the clear yield on the labels in
18 *Sinatro*, *Buso*, and *Reider*. Accordingly, a reasonable protein powder consumer could be deceived
19 by the packaging.[4]

20 Accordingly, Reliance's motion is DENIED as to this argument.

---

[4] Reliance makes other arguments about Costa's allegations related to the FDA rules, reviews of its products, other uses for protein powder, and the rear label. Costa sufficiently pleaded that a reasonable consumer would be deceived by the packaging and slack fill even without the allegations about the FDA, reviews, and other uses for the power. And I do not find that rear labels always or never dispel deception created by the front label or package size. Rather, as pleaded here, Costa asserts that a reasonable consumer would not look at the rear label information that uses one unit, then the side label information that uses another unit, then synthesize the information into a third unit that makes a powder product tangible and quantifiable for a reasonable consumer to easily understand. That is sufficient to state a claim at this stage.

6

## II. MISREPRESENTATION CLAIMS

### A. Intentional Misrepresentation – Failure to State a Claim

Under California law, "a claim for intentional misrepresentation must allege: '(1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage.'" *Oster v. Caithness Corp.*, No. 16-CV-03164-WHO, 2017 WL 3727174, at *10 (N.D. Cal. Aug. 30, 2017) (quoting *First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F. Supp. 2d 929, 938-39 (N.D. Cal. 2008)).

My prior Order found that Costa's complaint plausibly pleaded all of the required elements under California law except for justifiable reliance. Order 15:1-20. Those elements are again met here for the same reasons. *See id.* Reliance again argues that Costa cannot show intent to induce reliance, but her allegations of intent are even stronger now: she alleges that many nearly identical products have substantially less slack fill or use visual alternatives like fill lines and clear containers, FAC ¶¶ 83-88, 136-40, that Reliance knew of these alternatives and could have implemented them, *id.* ¶¶ 62, 91-92, and that Reliance intentionally chose not to use alternatives "to continue benefiting from consumer confusion and to maintain the competitive advantage it has obtained," *id.* ¶ 92; *see also id.* ¶¶ 78, 82. This is sufficient to plead intent to deceive, and it is sufficiently particular. *See Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 596 (N.D. Cal. 2022) (explaining the standard for alleging fraud with particularity under FRCP 9(b)[5]).

Additionally, Costa's new allegations sufficiently plead justifiable reliance because she alleges that a reasonable consumer would not or would be unable to synthesize the disparate information on the label to understand how much protein powder they would receive in one container, and that the disparate information is insufficient to dispel the deception created by the slack fill and size of the container. *Supra* Part I. Combined with the allegations that it was reasonable and justifiable to instead rely on the size of the container when making the purchasing decision, FAC ¶¶ 48, 244, Costa pleads the final element of intentional misrepresentation under California law. Reliance's motion is accordingly DENIED as to this argument.

---

[5] Although Reliance does not move to dismiss under FRCP 9(b), it asserts that Costa's allegations are not sufficiently particular to plead fraud. *See* Mot. 18:26-19:7.

### B. Intentional and Negligent Misrepresentation – Economic Loss Doctrine

Reliance argues that Costa's claims of intentional and negligent misrepresentation are barred by the economic loss doctrine. Mot. 19:24-20:22.

Under California law, the economic loss rule provides that a party to a contract must "recover in contract" rather than tort "for purely economic loss due to disappointed expectations, unless [they] can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988, 102 P.3d 268, 272 (2004); *see also Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1189 (9th Cir. 2021) ("[A] party to a contract generally cannot recover for pure economic loss—i.e., damages that are solely monetary—that resulted from a breach of contract unless he can show a violation of some independent duty arising in tort." (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 552, 981 P.2d 978, 983 (1999))). The purpose of the economic loss rule is to "prevent[] the law of contract and the law of tort from dissolving one into the other." *Robinson*, 34 Cal. 4th at 988 (citation omitted).

But "when one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort." *Id.* (citation omitted); *see also id.* at 989 ("[A] party's contractual obligation may create a legal duty and that breach of that duty may support a tort action." (citing *Erlich*, 21 Cal. 4th at 551)). The specific theory of fraud is important. Parties may not recover in tort for negligence in the formation or performance of the contract where the claim arises from the underlying contract. *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922-24, 505 P.3d 625, 632-33 (2022), *reh'g denied* (June 1, 2022) (citing Rest. 3d Torts § 3 at p.2)). But California law is clear that fraud claims based on "affirmative *intentional* misrepresentations of fact" are not barred by the economic loss rule, where "they were independent of [the defendant's] breach of contract."[6] *Robinson*, 34 Cal. 4th at 991 (emphasis added); *see also Foster*

---

[6] It is an open question "whether fraudulent concealment claims are exempt from the economic loss rule under California law." *Rattagan*, 19 F.4th at 1189 (certifying question to California Supreme Court); *see also id.* at 1191-92 (collecting cases). However, courts in this district currently do not bar claims for fraudulent concealment under the economic loss doctrine. *See Clenney v. FCA US LLC*, No. 22-CV-00547-VC, 2022 WL 2197074, at *3-4 (N.D. Cal. June 20, 2022) (noting that when the state's highest court has not decided an issue, that responsibility lies with federal courts sitting in diversity, and finding an exception to the economic loss rule is supported by California appellate courts, scholarship, and relevant decisions from other states).

*Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 992 (E.D. Cal. 2012) ("It has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for the fraud." (quoting *Lazar v. Superior Court*, 12 Cal. 4th 631, 645, 909 P.2d 981 (1996))).  And to maintain a fraud claim for affirmative intentional misrepresentations "based on the same factual allegations as a breach of contract claim, a plaintiff must show that 'the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm.'" *Foster Poultry Farms*, 868 F. Supp. 2d at 992 (quoting *Robinson*, 34 Cal. 4th at 989-90).

    Here Costa's negligent misrepresentation claim and injury arise from the underlying "contract"—the purchase of the allegedly deceptive product—which is barred by the economic loss doctrine.  *See Sheen*, 505 P.3d at 632-33.  And while Costa cites cases suggesting that the doctrine does not bar negligent misrepresentation claims, her cases came many years before the California Supreme Court's clear explanation in *Sheen*.  *See* Oppo. 18:12-16.  Accordingly, Costa's negligent misrepresentation claim is barred by the economic loss doctrine and is DISMISSED with prejudice because in this context, Costa cannot plead a negligent misrepresentation that will survive the economic loss rule.  *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend." (citation omitted)).

    But Costa sufficiently pleads that Reliance's intentional misrepresentations were both intentional and intended to harm.  *See Foster Poultry Farms*, 868 F. Supp. 2d at 992.  She alleges that Reliance knew its competitors used viable alternatives to the allegedly deceptive packaging, FAC ¶¶ 62, 91-92, and that Reliance intentionally chose to not use those alternatives so it could benefit from consumer confusion and maintain a competitive advantage, *id.* ¶¶ 78, 82, 92.  This sufficiently pleads that Reliance's use of slack fill was intentional and intended to "harm"—that is, to cause consumers to buy the product or spend more than they otherwise would have on the product—because it shows that there were viable, non-misleading alternatives that Reliance could have used; that Reliance knew of the viable, non-misleading alternatives; and that Reliance chose a container with more slack fill knowing its competitors had less slack fill and so knowing it

9

1    would have a competitive advantage. Taken together, this is sufficient to plead an intentional

2    misrepresentation claim that is not barred by the economic loss rule. *See Foster Poultry Farms*,

3    868 F. Supp. 2d at 992.

4    The motion is DENIED as to this claim.

### III. BREACH OF EXPRESS WARRANTY

Under California law, "[i]n order to plead a breach of express warranty claim, plaintiffs must allege facts sufficient to show that '(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 853 (N.D. Cal. 2018) (quoting *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 965-66 (N.D. Cal. 2017)); *see also Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1194-95 (N.D. Cal. 2018). "Judges in this district have found that statements on a food label can create an express warranty." *Zeiger*, 304 F. Supp. 3d at 853 (first citing *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899-90 (N.D. Cal. 2012); and then citing *Vicuna v. Alexia Foods, Inc.*, No. C 11- 6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012)).

The only argument that Reliance makes in its motion is that Costa's breach of express warranty claims fails because she fails to allege that a reasonable consumer could be misled by the container size given the other information on the label. Mot. 21:16-20. I have addressed and rejected that argument above. *Supra* Part I.

In reply, Reliance further argues that the size of the container cannot constitute "an affirmation of fact or promise or a description of the goods." *Zeiger*, 304 F. Supp. 3d at 965-66. "Ordinarily, arguments raised for the first time in a reply brief are waived." *Westwood v. Brott*, No. 22-CV-03374-CRB, 2022 WL 17418975, at *7 (N.D. Cal. Dec. 5, 2022) (citations omitted). However even if I consider this argument, as I reasoned in my prior Order, the Ninth Circuit has apparently not addressed whether container size may constitute an express warranty. *See, e.g.*, *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176 (9th Cir. 1997) (reasoning that a written statement would be sufficient for a breach of express warranty claim but not holding that it was required). The only slack fill case permitting or precluding express warranty claims that the parties point me

to or that I could find is *Maisel v. Tootsie Roll Industries, LLC*, No. 20-CV-05204-SK, 2021 WL 3185443 (N.D. Cal. July 27, 2021). In *Maisel* the Hon. Sallie Kim determined that the plaintiff stated a claim for breach of express warranty where she alleged the defendant put less candy into its boxes "than the size of the box suggested" because "the size of the Products' boxes constitute[d] a 'description of goods'" that formed part of the basis for the plaintiff's decision to buy the product. *Id.* at *5.

*Maisel* found that the size of the package alone could constitute an express warranty. In my prior Order, I found *Maisel* was not directly on point because there was no discussion of quantification information on the labels.[7] But Costa now pleads that the quantification information on the labels is insufficient to dispel the deception created by the size of the container; in essence, she pleads that the labels—at least *these particular labels*, for all the reasons discussed, *supra* Part I—are immaterial, given the size and alleged deceptiveness of the container. Consequently, *Maisel* is directly on point even though it does not discuss similar labels because the allegations in Costa's complaint imply the labels do not affect the misrepresentation. Therefore, I find persuasive the reasoning in *Maisel* that the size of the container can constitute an express warranty. I find that Costa sufficiently pleaded breach of express warranty here.[8]

The motion is DENIED as to this claim.

IV.  **CRLA**

Finally, Reliance moves to dismiss Costa's CRLA claims for failure to include the required

---

[7] In its reply, Reliance repeatedly misconstrues my prior Order, asserting that I "rejected" the finding in *Maisel* that the size of the container could constitute a description of goods, Repl. 13:21-23, and that I "considered and rejected" the argument that the container alone is sufficient to form the basis of the breach of warranty claim, *id.* 14:8-10. That is not what my Order said. Rather, I found that Costa failed to plead whether the container size could constitute an affirmation of fact under *Zeiger* test without addressing the information on the label, Order 16:10-16, noting that "[m]y finding does not preclude Costa from pleading a breach of express warranty claim based on container size," *id.* 16:17-18, and that *Maisel*'s finding that the container size constituted a description of goods was "compelling" even though the facts were not entirely on point, *id.* 17:9-12.

[8] The parties do not contest the second and third elements of the express warranty claim. Costa pleads that the size of the container was part of the basis of the bargain, *see* FAC ¶¶ 48, 57, 223, 234, and that the warranty was breached, *see id.* ¶¶ 31, 77, 169, 189, 235, which is sufficient under California law, *see Zeiger*, 304 F. Supp. 3d at 853.

affidavit. Mot. 21:21-22:9. Costa subsequently filed the required affidavit. *See* Oppo. 19:22-23; [Dkt. No. 39] (Affidavit). Reliance does not discuss the CRLA claim in its reply. To the extent that Reliance maintains its motion to dismiss the CRLA claim, it is DENIED. *See Leventhal v. Streamlabs LLC*, No. 22-CV-01330-LB, 2022 WL 17905111, at *7 (N.D. Cal. Dec. 23, 2022) ("A court need not dismiss a CLRA claim based on the fact that the venue affidavit was not filed concurrently with the complaint." (citations omitted)).

## CONCLUSION

Reliance's motion is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated: April 18, 2023



William H. Orrick
United States District Judge